**Robert LEAKE, Plaintiff,**

v.

**LONG ISLAND JEWISH MEDICAL CENTER, Defendant.**

No. 87 CV 510.

United States District Court, E.D. New York.

July 13, 1988.

Stecher Jaglom & Prutzman, New York City, for plaintiff by L. Donald Prutzman, Jr., Josiah Greenberg.

Summit Rovins & Feldesman, New York City, for defendant by Fredric C. Leffler.

MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendant moves this Court for summary judgment pursuant to Federal Rule of

Civil Procedure 56. Defendant contends that this matter should be dismissed, first, because this plaintiff does not have a valid claim under section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West Supp.1988), and, second, because plaintiff's claim based on the New York State Human Rights Law, N.Y.Exec.Law § 296.1(a) (McKinney 1982), is barred under the doctrine of election of remedies.

## FACTS

Robert Leake, a one-armed person, was hired by Long Island Jewish Medical Center ("the Hospital") in 1974. He worked first as a porter and then as a housekeeper until April 11, 1985. He alleges in his complaint that he told the Hospital several times that he was unable to work on the ground floor of the Hospital where the Hospital laboratories were, because he would be required to wear gloves and was unable to do so because of his handicap. Complaint ¶¶ 4–5, 7. Plaintiff was suspended for three days in January 1985 for alleged misconduct. Following that suspension and a short assignment to the seventh floor, plaintiff was assigned to the ground floor. He refused to return from a medical leave of absence to work on the ground floor. The Hospital terminated his employment on April 11, 1985, for his refusal to return to work.

The Hospital receives federal grants that are destined for specific research and treatment programs. Affidavit of Harold Hogstrom in Support of Motion for Summary Judgment at 1 (Apr. 15, 1988). None of the money from the grants goes into the Housekeeping Department for which plaintiff worked. *Id.*

On June 6, 1985, plaintiff filed a complaint with the New York State Division of Human Rights alleging discrimination on the basis of race, color and disability. Exhibit A to affidavit of Fredric C. Leffler in Support of Motion for Summary Judgment (Apr. 18, 1988). On July 25, 1986, the Division of Human Rights issued a Determination and Order after Investigation finding No Probable Cause for discrimination. Exhibit B to Leffler Affidavit. The Division of Human Rights concluded that the Hospital's action in suspending plaintiff was precipitated by plaintiff's own actions. *Id.*

## DISCUSSION

### I. *Rehabilitation Act Claim*

Plaintiff first alleges a claim under section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794 (West Supp.1988). Section 504 provides in part:

> No otherwise qualified individual with handicaps in the United States, ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C.A. § 794. In *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), the Supreme Court interpreted section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (1982), prohibiting sex discrimination in "any education program or activity receiving Federal financial assistance" to mean that only the particular program or activity receiving federal grant money had to comply with the Title IX prohibition against sex discrimination. *Grove City,* 465 U.S. at 573–74, 104 S.Ct. at 1221–22. In *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), the Supreme Court stated that the ban on discrimination against the handicapped in section 504 was also limited "to the specific program that receives federal funds." *Id.* at 636, 104 S.Ct. at 1255.

On March 22, 1988, Congress enacted the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259, 102 Stat. 28 (1988). The stated purpose of the statute is to "restore the broad scope of coverage and to clarify the application of ... section 504 of the Rehabilitation Act of 1973...." Pub.L. 100–259, 102 Stat. 28. Congress found that the Supreme Court had unduly narrowed the application of section 504 and that it was "necessary to restore the prior consistent and long-standing executive

branch interpretation and broad, institution-wide application of those laws as previously administered." Restoration Act § 2 (to be codified at 20 U.S.C. § 1687 note). The Restoration Act amended section 504 of the Rehabilitation Act in part by defining the term "program or activity" as "all the operations of . . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation. . . ." Restoration Act § 4(b)(3)(A)(ii) (to be codified at 29 U.S.C. § 794(b)(3)(A)(ii)). The Restoration Act overrules *Grove City College v. Bell* and *Consolidated Rail Corp. v. Darrone* by prohibiting discrimination against the handicapped on an institution-wide basis, instead of only in connection with the limited program or activity actually receiving federal funds, if any federal funds are received by any program or activity of the institution. The issue before the Court is whether the Restoration Act should be applied retroactively to enable plaintiff, who initiated his suit before its passage, to sue.

A court must apply the law in effect at the time it renders its decision, "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The *Bradley* Court rejected the proposition that a change in the law should be applied to a pending case only when it was the "clear and stated intention of the legislature." *Id.* at 715, 94 S.Ct. at 2018. The Restoration Act itself does not indicate a Congressional intent for either retroactive or exclusively prospective application.

Contrasting with the presumption of retroactive application found in *Bradley* is the proposition set forth by the Supreme Court in *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), that statutory changes in substantive requirements for federal grants should not be presumed to operate retroactively. *Id.* at 638, 105 S.Ct. at 1559. The *Bradley* Court had stated that it would not apply a statute change

to a pending action "where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020. In *Bennett*, the Court held that absent a clear indication by Congress to do so, a statute that changed substantive standards governing federal grants would not be applied retroactively. *Bennett*, 470 U.S. at 641, 105 S.Ct. at 1561.

Since the defendant contends that *Bennett* is controlling in this case, it merits some discussion. The amendment at issue in *Bennett* changed the method by which eligibility of schools to receive Title I funds was to be determined. *Id.* at 636, 640 n. 4, 105 S.Ct. at 1558, 1560 n. 4. The Court concluded that eligibility requirements in place at the time the grants were made would apply to the action. *Id.* The Court based its decision not to apply retroactively the amendments on the fact that the federal government should lose its preexisting right of recovery under the amended statute and because New Jersey had given assurances that it had complied with statutory and regulatory requirements in place at the time to obtain the grants when in fact it had not. *Id.* at 639, 105 S.Ct. at 1560. The intervening amendments in *Bennett* were not enacted, as was the amendment in the present case, to overrule a Supreme Court interpretation of an original statute. Instead, that amendment changed substantive grant requirements in a way that Congress had not originally intended.

As stated above, the Restoration Act itself does not indicate any intent of Congress for retroactive application. However, Congressman Donald Edwards of California, the floor sponsor of the Restoration Act, stated that:

> This bill applies to all pending cases. It is of great concern that it has taken this long to pass this legislation. I wish no cases had been lost because of this delay.

134 Cong.Rec. H583 (daily ed. Mar. 2, 1988). Additionally, during the floor debate to override President Reagan's veto of the Restoration Act, Senator Robert Pack-

wood of Oregon stated that "all we have done is change the law back to what we thought it was. We have not expanded it beyond what we thought it was." 134 Cong.Rec. S2735 (daily ed. Mar. 22, 1988). Senator Robert Stafford of Vermont, an original sponsor of section 504 of the Rehabilitation Act, stated that the "institution-wide definition [was] originally intended by legislators." *Id.* at S2739. Although statements made during floor debates are not controlling in analyzing legislative history, *Weinberger v. Rossi*, 456 U.S. 25, 35 n. 15, 102 S.Ct. 1510, 1517 n. 15, 71 L.Ed.2d 715 (1982), Congressional intent may be inferred from the statement of a sponsor on the floor, *see Regents of the University of California v. Public Employment Relations Board*, —— U.S. ——, 108 S.Ct. 1404, 1409, 99 L.Ed.2d 664 (1988).

Although the Restoration Act does not include a provision stating that it should be applied retroactively, the use of the terms "restore" and "clarify" indicate that Congress did not intend to change the statute; rather it intended to reject the Supreme Court's interpretation. The Second Circuit has found that such language indicates that Congress intended to "codify a congressional purpose long in place which Congress believes the Supreme Court has misinterpreted." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987). In fact, in *Mrs. W.* the Second Circuit addressed a very similar situation. Congress enacted the Handicapped Children's Protection Act of 1986, 20 U.S.C.A. § 1415(f) (West Supp.1988), to enable handicapped children and youths to sue under section 504, section 1983 and other statutes, to overrule a Supreme Court decision that had limited the right to bring actions to the remedial scheme set forth in the Education of the Handicapped Act ("EHA"), 20 U.S.C.A. §§ 1400–85 (West 1978 and Supp.1988). *Mrs. W.*, 832 F.2d at 754–55. The legislative history and terms of the amendment in *Mrs. W.* did not specifically indicate that the amendment was to be applied retroactively; however, the Second Circuit inferred that such an intent was clear because of an expressed Congressional intent to "reestablish rights" and "reaffirm ... the viability of section 504." *Id.* The Handicapped Children's Protection Act of 1986 created the right to pursue actions outside the remedial schemes set up by the states under the EHA. This amendment, as interpreted by the Second Circuit, exposed the states to actions in federal court and possible liability for attorney's fees under section 1988, *see* 42 U.S.C. § 1988 (1982).

The Restoration Act contains the same language from which the Second Circuit inferred a Congressional intent for retroactive application in *Mrs. W.* The stated purpose of the statute is not to amend but to "restore" and "clarify." Neither the plaintiff in this case nor the plaintiffs in *Mrs. W.* had the right to sue under section 504 of the Rehabilitation Act prior to the respective amendments; both were given that right through amendment. Both amendments were directed at overruling a Supreme Court interpretation of a statute.

Additionally, *Bennett v. New Jersey* may be distinguished. In concluding that it would not apply an amendment dealing substantively with federal grant requirements retroactively, the Supreme Court was refusing to change the rules after the game had been played. The State of New Jersey had incorrectly approved grant applications in applying for the federal grant money. *See Bennett*, 470 U.S. at 636, 105 S.Ct. at 1558. It was seeking to avoid repaying that money to the federal government. The methods of determining eligibility for federal grant money concern the substantive rights of the grant seeker and the federal government. In contrast, the Restoration Act merely gives plaintiff a remedy to redress the violation of his rights. Such a substantive violation was always redressable by those whose employment fell under the narrower "program or activity" definition of *Grove City* and *Darrone*. From a policy standpoint, it arguably makes more sense to require the Hospital to pay for the violation of plaintiff's civil rights, since that was what Congress intended in the first place.

Accordingly, we are compelled to apply the Restoration Act retroactively and plain-

tiff's suit under section 504 of the Rehabilitation Act will go forward.

## II. *New York State Human Rights Law Claim*

■ Leake's second claim alleges that the Hospital discriminated against him on the basis of his disability in violation of the New York Human Rights Law. *See* N.Y. Exec.L. § 296.1(a) (McKinney 1982). The Human Rights Law provides an aggrieved person with a choice of remedies. A person may elect an administrative remedy under section 297.1, N.Y.Exec.Law § 297.1 (McKinney Supp.1988), or sue in any court of appropriate jurisdiction for damages, N.Y.Exec.L. § 297.9 (McKinney 1982). By the language of section 297.9, a court action may be pursued "unless such person had filed a complaint hereunder or with any local commission on human rights, ... provided that, where the division has dismissed such complaint on grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed. *Id.*

Plaintiff filed a complaint with the State Division of Human Rights on or about June 25, 1985. A year and a month later, on July 25, 1986, the Division of Human Rights issued a Determination and Order After Investigation dismissing the complaint. A federal court must apply state law with respect to pendent state claims. *Collins v. Manufacturers Hanover Trust Co.*, 542 F.Supp. 663, 673 (S.D.N.Y.1982). Plaintiff chose to pursue the administrative route and, pursuant to the terms of section 297.9, may not now assert his state claims in federal court (or any other court).[1] *Hunnewell v. Manufacturers Hanover Trust Co.*, 628 F.Supp. 759, 761 (S.D.N.Y. 1986); *see also Collins*, 542 F.Supp. at 672.

Further, the plaintiff's claims were addressed and decided by the Division of Human Rights, the matter was not discussed "for administration convenience" so as to provide an exception under the statute. His federal claims are not precluded by this pursuit of an administrative remedy. *Hunnewell*, 628 F.Supp. at 761; *Collins*, 542 F.Supp. at 672. Accordingly, plaintiff's claim under the New York Human Rights Law must be dismissed under the doctrine of election of remedies.

## CONCLUSION

In accordance with the above discussion, summary judgment is hereby denied as to plaintiff's claim under section 504 of the Rehabilitation Act and granted as to his claim under the New York Human Rights Law.

SO ORDERED. Submit order, on notice, in accordance with the above decision.

■

---

[1] Plaintiff claims that his state claims are not precluded under section 297 based on the reasoning of the respective courts in *State of New York v. Holiday Inns, Inc.*, 656 F.Supp. 675 (W.D.N.Y.1984), and *Kaczor v. City of Buffalo*, 657 F.Supp. 441 (W.D.N.Y.1987). However, both cases concern situations in which plaintiffs had originally filed with the Equal Employment Opportunity Commission (EEOC) as required by Title VII, and the EEOC had transferred the matters to the Division of Human Rights pursu-

ant to an agreement between the agencies. *Kaczor*, 657 F.Supp. at 446–47; *Holiday Inns*, 656 F.Supp. at 683. The courts held that since the plaintiffs had not elected to file with the Division of Human Rights, they had not elected the administrative remedy under section 297.1(a) and, thus, were not precluded from asserting their state claims in their federal actions. *Kaczor*, 657 F.Supp. at 447; *Holiday Inns*, 656 F.Supp. at 683.