Geneva BUTTS, Plaintiff–Appellant,

v.

The CITY OF NEW YORK DEPART-
MENT OF HOUSING PRESERVA-
TION AND DEVELOPMENT, Defen-
dant–Appellee.

No. 672, Docket 92–7850.

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1992.

Decided March 24, 1993.

Eric Schnapper (Julius L. Chambers, NAACP Legal Defense and Educational Fund, Inc., C. Vernon Mason, New York City, of counsel), for plaintiff-appellant.

Alan G. Krams (Fay Leoussis, O. Peter Sherwood, New York City Corp. Counsel, of counsel), for defendant-appellee.

Before: MESKILL, Chief Judge, MAHONEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Geneva Butts appeals from an order of the United States District Court for the Southern District of New York (Louis J. Freeh, *Judge*), dated July 7, 1992, dismissing in its entirety Plaintiff's employment discrimination action brought against the City of New York Department of Housing Preservation and Development (the "City") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, and state common law. Plaintiff, an African–American woman, alleges that the City denied her promotions and discriminated against her in the terms and conditions of her employment based on her race and sex.

The district court dismissed Plaintiff's complaint in its entirety pursuant to Fed. R.Civ.P. 12(b)(1) and (6). Her various Title VII claims were dismissed on the grounds that they were either time-barred or had not been raised in her discrimination charge with the Equal Employment Opportunity Commission (the "EEOC"). The district court, relying on *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d (1989), dismissed Plaintiff's § 1981 terms and conditions claims, since,

under *Patterson*, a § 1981 cause of action will lie for discrimination in refusing to enter a contract but not for discrimination in contract performance. The district court also dismissed her promotion claims, apparently because it found that the promotions would not have created a "new and distinct" relation between employee and employer as required by *Patterson*. *See id.* at 185, 109 S.Ct. at 2377. The district court further held that the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991) (the "Act"), which, largely to nullify the effect of *Patterson*, extended § 1981 to include promotion claims and other terms and conditions claims, applied prospectively only and therefore did not make Plaintiff's claims actionable. The court also dismissed Plaintiff's state common law claims, but she does not raise this on appeal.

We affirm the district court's decision that the Civil Rights Act of 1991 does not apply retroactively to Plaintiff's § 1981 claims, and, thus, its dismissal of Plaintiff's § 1981 claims for discrimination in the terms and conditions of her employment. However, since we believe Plaintiff's complaint states a cause of action under *Patterson* as to her timely § 1981 promotion claims, we reverse their dismissal. We also reverse the dismissal of the two Title VII claims alleging that Butts was excluded from department reorganization meetings based on her race and sex, but affirm the dismissal of the remainder of her Title VII claims.

## BACKGROUND

The City hired Geneva Butts in April, 1972 as a Computer Systems Manager and has continuously employed her ever since. On November 22, 1989, Butts filed a charge of discrimination with the EEOC. The charge alleged that starting in October, 1987, the City systematically discriminated against her because of her race and sex in the terms and conditions of her employment. This was done, she alleged, by excluding her from meetings and duties to which her position should have entitled her, cutting her off from her supervisors, defaming her, and by denying her pro-

motional opportunities. She claimed that notwithstanding her promotion in April, 1987 to the title of Acting Deputy Director of the Computer Center, she was denied any increased authority; that though placed in charge of the Computer Center from June to September, 1987, she only had ten telephone conversations over that period with the Deputy Commissioner to whom she reported; that from 1987 to the present, she was excluded from department reorganization meetings in which she believed she should have been included; and that starting in October, 1987, she was discouraged from applying for higher positions in the Department and her work performance was unfairly criticized. She further alleged that in November, 1989, the same month in which she filed her charge, the City, in a measure designed to reduce the number of African–Americans in its employ, was undertaking to move her group from Harlem to a location in midtown Manhattan.

The EEOC investigated Plaintiff's allegations and, on May 7, 1991, dismissed her charge. The EEOC found that the alleged relocation of the computer group from Harlem to midtown had not occurred. The EEOC also concluded that the rest of her allegations were time-barred, since they occurred in 1987, outside the 300–day limitations period for filing EEOC charges applicable to claims arising in New York. 42 U.S.C. § 2000e–5(e).

Butts filed the present action on August 5, 1991, and her amended complaint on March 16, 1992. She claimed that from 1987 on the City denied her promotions and discriminated against her in the terms and conditions of her employment based on her race and sex. She specified five instances in which she allegedly was denied promotional opportunities. Two of these promotion denials allegedly occurred in 1987. The next incident is said to have occurred in 1989, when she inquired into the possibility of her promotion to the newly-created position of Director of Systems Architecture, "but was not given a clear response." The fourth and fifth took place in May, 1990, and June, 1991, when, on each occasion, she applied for the vacant position of

Deputy Commissioner of the Office of Management and Administration, was never granted an interview, and the position went to a caucasian man.

Butts also alleged that she continually was deprived of the responsibility and power her position entailed. She claimed that from 1987 to the present she was repeatedly denied access to her supervisors; that in 1987, although she was promoted from Deputy Director to Director, persons formerly her subordinates were placed at her level of responsibility; and that, in 1988, the City eliminated her duty as Computer Training Liaison and excluded her from a study of ways to improve the efficiency of the Department's information systems. Also, while dropping the earlier claim that the City was going to move her department from Harlem to midtown, she claimed that discrimination occurred when she was excluded from discussions about the proposed move.

The City moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6). On July 7, 1992, the district court granted Defendant's motion in its entirety. The court ruled that the Title VII claims either were time-barred as occurring more than 300 days before the filing of the EEOC charge, or were absent from the charge entirely, thereby depriving the district court of jurisdiction to hear them. The district court dismissed Plaintiff's § 1981 claims on the ground that they all involved issues of contract performance, which are not actionable under *Patterson*. The court also ruled that the 1991 Civil Rights Act, which would have made any timely contract performance claims actionable under § 1981, did not apply retroactively. This appeal followed.

### DISCUSSION

#### I. The Title VII Claims

The district court dismissed Plaintiff's Title VII claims on the grounds that a number of them were not filed within the 300-day period as required by 42 U.S.C. § 2000e-5(e), and the remainder were not included in the EEOC charge and therefore the court was without jurisdiction over them.

■■■ When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred. *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332-33 (2d Cir.1992); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days. 42 U.S.C. § 2000e-5(e). Two of the five promotion claims in Plaintiff's complaint, and most of her claims of discrimination in the terms and conditions of her employment, allegedly occurred in 1987 and 1988. Since her EEOC charge was not filed until November 22, 1989, these claims are time-barred.

■■ A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to that alleged in the EEOC charge. *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198 (2d Cir. 1985); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir.1981); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980). This exhaustion requirement is an essential element of Title VII's statutory scheme. As we noted in *Miller v. International Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), with respect to an analogous EEOC charge requirement in the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*: "[t]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *See also Stewart*, 762 F.2d at 198 ("the purpose of the [Title VII] exhaustion requirement ... is to give the

administrative agency the opportunity to investigate, mediate, and take remedial action ...").

Three of the promotion claims in Plaintiff's civil action involve alleged acts of discrimination occurring in 1989 and 1990. Butts claims that in 1989, she was denied promotion to Director of Systems Architecture and that in May, 1990 and again in June, 1991, after she filed her EEOC charge, she was denied promotion to Deputy Commissioner of the Office of Management and Administration. However, the first promotion allegation was never raised in the November 22, 1989 EEOC charge and Butts did not file a second EEOC charge alleging either this or the two incidents she says occurred after she filed her charge. Since these charges were never presented to the EEOC, the district court was without jurisdiction to hear them. Similarly, her various terms and conditions claims either were not alleged in her EEOC charge or are time-barred.

Butts argues that the allegations that were not in her EEOC charge are "reasonably related" to the allegations that were in her EEOC charge and can be brought on that basis. We disagree as to all but two of her claims.

We have recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action. We have loosely referred to these claims as "reasonably related" to the allegations in the EEOC charge. While the three are each animated by the common notion of fairness to civil rights litigants, their "reasonableness" derives from separate rationales.

■ The first type of "reasonably related" claim we have recognized is essentially an allowance of loose pleading. Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978); *see also Gomes,* 964 F.2d at 1334; *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

■ The second type of "reasonably related" claim is one alleging retaliation by an employer against an employee for filing an EEOC charge. *Malarkey v. Texaco, Inc.,* 983 F.2d 1204 (2d Cir.1993); *Owens v. New York City Housing Authority,* 934 F.2d 405, 410–11 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991), *Goodman,* 645 F.2d at 131; *Kirkland,* 622 F.2d at 1068. In such cases the EEOC charge requirement is not excused because the new claims likely would have been discovered by the EEOC investigation. While this is possible, it is equally possible that the retaliation would come after the EEOC investigation was completed. *See Malarkey,* 983 F.2d at 1209 ("We see no reason why a retaliation claim must arise before administrative proceedings terminate in order to be reasonably related"). Rather, in such situations, we have relaxed the exhaustion requirement based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself. *Owens,* 934 F.2d at 410–11. The EEOC already will have had the opportunity to investigate and mediate the claims arising from the underlying discriminatory acts alleged. Due to the very nature of retaliation, the principle benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation. Indeed, requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination.

■ The third type of reasonably related claim is where a plaintiff alleges further

incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *See Almendral,* 743 F.2d at 967 (discrimination through manipulating civil service rules was reasonably related to EEOC charge alleging manipulation of rules since it alleged "essentially the same" acts). Such an incident might not fall within the scope of the EEOC investigation arising from the charge, since it might occur after the investigation was completed, as was the case in *Almendral. Id.* at 966–67. However, the values associated with exhaustion are not entirely lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents. The fact that a charge alleging the same method was not resolved by the EEOC to the plaintiff's satisfaction makes it more likely that a new charge alleging the later incident would meet the same fate. Our holding that such conduct is "reasonably related" implicitly recognizes the cost to a plaintiff of requiring exhaustion in circumstances where the likelihood of a successful settlement is limited.

■ In this case, the majority of Plaintiff's claims are not reasonably related to timely allegations in her EEOC charge under any of the three theories. Most of the allegations in her EEOC charge are time-barred and thus cannot serve as predicates for allegations in the complaint said to be reasonably related. Of the timely allegations in the charge, all but two are too vague to serve as predicates for allegations in the complaint. For example, Butts alleged in the charge that she had "consistently been the target of discriminatory practices and treatment" from "October of 1987 to [the] present." While part of this claim relates to conduct occurring in 1989, which is within the limitations period, the allegation was insufficiently specific to enable the EEOC to investigate it. The same is true for Plaintiff's allegation that she was "denied promotional opportunities and consideration based on my race and sex." Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated. *See Rush v. McDonald's Corp.,* 966 F.2d 1104, 1110 (7th Cir.1992).

■ However, two of Plaintiff's terms and conditions claims are reasonably related to allegations in her EEOC charge, under the first theory stated above. Plaintiff alleged in the charge that "[a]fter October 1987, ... [Plaintiff's supervisor] held department reorganization meetings without informing me of the meetings or results." In her complaint, she claims that "on or about 1988" she was excluded from discussions relating to her department's participation in a city-wide study of ways to improve efficiency. She also alleges in her complaint that she was excluded from discussions about the proposed move of the department. We note parenthetically that when Plaintiff alleged the move itself in her EEOC charge as an act of discrimination, the EEOC upon investigation found that the move never took place, and Plaintiff has dropped the claim.

An EEOC investigation into the charge of exclusion from department reorganization meetings likely would have included an inquiry into her exclusion from the meetings set forth in her complaint. Exclusion from discussions about the departmental move and about potential changes to improve efficiency are closely enough related to exclusion from "department reorganization" meetings that it is reasonable to conclude that Plaintiff gave the EEOC notice of these incidents. We therefore find these claims to be reasonably related to the one in her EEOC charge and that the district court erred in dismissing them.

We note, however, that Plaintiff's EEOC charge was vague as to the dates of these incidents, merely stating that the exclusion from meetings took place "[a]fter October 1987." Since the charge allegations were timely only as to acts occurring on or after a date 300 days before November 22, 1989, when Butts filed the charge, on remand the

district court only may hear the two claims insofar as they relate to acts occurring on or after this date.

Finally, Plaintiff argued before the district court that she should be permitted to bring her time-barred claims based on the "continuous violation" exception to the Title VII statute of limitations. She appears to have abandoned this argument on appeal. In any event, the continuous violation exception applies only where discrimination is accomplished through a specific official policy or mechanism, which is not alleged here. *See, e.g., Cook v. Pan American World Airways, Inc.,* 771 F.2d 635 (2d Cir.1985) (discriminatory seniority list), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Association Against Discrimination in Employment, Inc. v. Bridgeport,* 647 F.2d 256 (2d Cir. 1981) (discriminatory fire department tests), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).

We therefore affirm the district court's dismissal of Plaintiff's Title VII claims as to all but the two claims discussed above.

## II. Retroactivity of the Civil Rights Act of 1991

Plaintiff also alleges that the same acts of discrimination cited in her Title VII claim violated 42 U.S.C. § 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that § 1981 redresses discrimination in contract formation but not in contract performance. Thus, under *Patterson,* discrimination in the terms and conditions of employment is not actionable under § 1981. The *Patterson* Court acknowledged, however, that discrimination in promotion could give rise to a cause of action under § 1981, but only where "the promotion rises to the level of an opportunity for a new and distinct relation between the

employee and the employer...." *Id.* at 185, 109 S.Ct. at 2377.

While the 1989 decision in *Patterson* is the latest pronouncement by the Supreme Court on § 1981, it is not the end of the story. The *Patterson* decision was disfavored by some in Congress and prompted legislative efforts to overcome what was perceived to be *Patterson*'s limiting effect on private civil rights enforcement. In the 1991 Civil Rights Act, among other changes in the civil rights laws, Congress amended § 1981 to reach terms and conditions claims, including promotion claims. The Act, in a new definitions section, provided that the term "make and enforce contracts" in § 1981 "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

The Act took effect on November 21, 1991. The last act of discrimination alleged in Plaintiff's complaint occurred in 1990. Not surprisingly, since Plaintiff's complaint alleging discrimination in promotion and in the terms and conditions of her employment clearly would state a cause of action under the amended § 1981, she argues that the 1991 Act applies retroactively. If it does, there is no need to inquire into whether Plaintiff's promotion claims state a cause of action under *Patterson.*

The 1991 Act contains no express provision stating whether the Act as a whole is to be applied retroactively or prospectively only, although it does provide that two sections unrelated to this case are to be applied only prospectively. Thus, to determine the retroactivity question, we must examine the Act's language, its legislative history, the significance of the two sections where prospectivity is specified in relation to the Act as a whole, and view the Act in light of applicable presumptions. *See generally United States v. Thompson/Center Arms Co.,* —— U.S. ——, ——–——, 112 S.Ct. 2102, 2107–09, 119 L.Ed.2d 308 (1992) ("ordinary rules of statutory construction" include examination of wording, legislative

history and purpose, and the role of a given section in relation to the entire act).

## A. Legislative History of the 1991 Civil Rights Act

No formal legislative history, in the form of committee reports or conference reports, accompanies the 1991 Act, much less any agreed-upon statement of congressional intent on the retroactivity issue. *See Gersman v. Group Health Ass'n, Inc.,* 975 F.2d 886, 891 (D.C.Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3523 (Jan. 13, 1993). This does not mean, however, that the retroactivity issue was not very much on the minds of the legislators. Rather, unable to agree on the matter, they agreed to disagree and left the matter for the courts to decide.

The Congressional Record is replete with floor speeches by Senators and Representatives stating either that the bill is intended to apply prospectively only or that it was meant to apply retroactively. See cases collected in *Davis v. San Francisco,* 976 F.2d 1536, 1554 (1992), *reh'g denied, vacated in part as moot, and remanded in part,* 984 F.2d 345 (9th Cir. 1993); *see also Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 227 (7th Cir. 1992), *petition for cert. filed,* 61 U.S.L.W. 3446 (Dec. 3, 1992). The Supreme Court, while recognizing that floor speeches may be helpful in discerning congressional intent, *see Regents of the University of California v. Public Employment Relations Bd.,* 485 U.S. 589, 595–96, 108 S.Ct. 1404, 1409–10, 99 L.Ed.2d 664 (1988), has noted that the "contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history," *Weinberger v. Rossi,* 456 U.S. 25, 35 n. 15, 102 S.Ct. 1510, 1517 n. 15, 71 L.Ed.2d 715 (1982). Floor speeches are of particularly limited assistance in resolving highly controversial issues of congressional intent. Since any member can make a floor speech, there is scant utility in totaling up the number of speeches on each side of an issue and attempting to divine congressional intent from the quantity of Congressional Record pages generated on either side.

A bit more enlightenment is possible from looking at the sequence of events that led to the 1991 Act's passage and the maneuvering of those on both sides of the retroactivity issue. In 1990, Congress presented President Bush with a civil rights bill, containing the same proscription against discrimination in the terms and conditions of employment as the 1991 version, that was expressly retroactive. The President vetoed the bill and criticized its "unfair retroactivity rules" in his veto message. President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990, 26 Weekly Comp.Pres. Doc. 1632, 1634 (Oct. 22, 1990). When the 1991 bill was sent to the President, it did not contain a retroactivity provision. In his statement upon signing the 1991 Act, the President instructed "all officials in the executive branch" to follow "as authoritative interpretive guidance" memoranda of law inserted into the Congressional Record by Senator Dole which stated, among other things, that the 1991 Act should not be considered to be retroactive. Statement of President George Bush Upon Signing S1745, 1991 U.S.C.C.A.N. 768, 769 (Nov. 21, 1991) (adopting memoranda at 137 Cong. Rec. S15472 (daily ed. Oct. 30, 1991) and 137 Cong.Rec. S15953 (daily ed. Nov. 5, 1991)).

This sequence of events was sufficient to persuade the Eighth Circuit that the 1991 Act was intended to apply prospectively only. *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992). The court reasoned: "When a bill mandating retroactivity fails to pass, and a law omitting that mandate is then enacted, the legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process." *Id.* at 1378; *see also Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Wisconsin Employment Relations Bd.,* 340 U.S. 383, 392 n. 15, 71 S.Ct. 359, 364 n. 15, 95 L.Ed. 364 (1951) (Congress's non-inclusion of a provision in a bill's later version criticized by the President upon vetoing an earlier version demonstrates Congress's abandonment of the position contained in the provision).

While we would agree with the principle enunciated in *Fray* as a general matter, its application in this case is undermined by complicating facts. To be sure, Congress abandoned any attempt to make the Civil Rights Act explicitly retroactive in its final version. However, Congress also rejected numerous proposals by the President and allied Senators and Representatives explicitly to make the Act prospective only. *See, e.g.,* 137 Cong.Rec. H3898 (daily ed. June 4, 1991) (proposal of Representative Michel containing prospective-only provision). As Judge Posner concluded after reviewing these circumstances:

> It seems futile to search for a legislative intent, bearing in mind that the President is by virtue of the veto power a key participant in the legislative process. President Bush would probably have vetoed a statute that contained an express provision for retroactivity—he had done so the previous session and his veto had not been overridden—but the Democratic majority in both houses would equally have "vetoed" an express provision for prospective application. As so often happens, the contenders could not agree, so they dumped the question into the judiciary's lap without guidance.

*Luddington,* 966 F.2d at 227. The accuracy of this observation is reinforced by the candid admissions of bill sponsors Senators Danforth and Kennedy that the various Senate floor statements were inconclusive on the retroactivity question and that it would be left for the courts to resolve. 137 Cong.Rec. S15324–25 (daily ed. Oct. 29, 1991) (Sen. Danforth: "a court would be well advised to take with a large grain of salt floor debate and statements placed into the Congressional Record which purport to create an interpretation for the legislation that is before us"); 137 Cong.Rec. S15485 (daily ed. Oct. 30, 1991) (Sen. Kennedy: retroactivity "will be up to the courts to determine").

 Every circuit except the Eighth that has considered the issue has held that the legislative history is ambiguous as to whether the 1991 Act should be applied retroactively. *Baynes v. AT & T Technologies, Inc.,* 976 F.2d 1370, 1372 (11th Cir.

1992); *Gersman,* 975 F.2d at 891; *Luddington,* 966 F.2d at 227; *Vogel v. Cincinnati,* 959 F.2d 594, 597–98 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992); *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1373 (5th Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3356 (Sept. 29, 1992). We agree that the legislative history is ambiguous. Moreover, in light of the inability of the prospective-only and retroactive factions within Congress to insert their respective provisions into the final version of the 1991 Act, we believe that the Act is "deliberately ambiguous" regarding retroactivity and that we thus can infer an affirmative intent to make the Act neither prospective-only nor retroactive but to leave the issue to the judiciary. *See Johnson,* 965 F.2d at 1373 (Act is "deliberately ambiguous"); *see also Luddington,* 966 F.2d at 227.

Plaintiff argues that the Act was intended to restore pre-*Patterson* law and that therefore a presumption of retroactivity is appropriate. She relies on our decision in *Leake v. Long Island Jewish Medical Center,* 869 F.2d 130 (2d Cir.1989) (per curiam), *aff'g substantially for reasons stated at* 695 F.Supp. 1414 (E.D.N.Y.1988). However, this reliance is misplaced. In *Leake,* we held that the Civil Rights Restoration Act of 1987 (the "Restoration Act"), which effectively overturned the Supreme Court's decisions in *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) (holding that a ban on discrimination by schools receiving Title IX funds applies only to the specific program receiving aid and not to the entire school), and *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 635–36, 104 S.Ct. 1248, 1255–56, 79 L.Ed.2d 568 (1984) (applying *Grove City* to the Rehabilitation Act of 1973), applied retroactively to the plaintiff's Rehabilitation Act claim. But in *Leake,* we adopted the reasoning of the district court that the Restoration Act's stated purpose to "restore" and "clarify" the meaning of language in the Rehabilitation Act created an inference that Congress intended the statute to apply retroactively. *Leake,* 695 F.Supp. at 1417–18. This inference was supported by spon-

sors' floor speeches stating that the Restoration Act would apply retroactively. *Id.* at 1416–17. Similarly, in *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir.1987), we found "clear legislative history" that amendments to 42 U.S.C. § 1983 "simply codif[y] a congressional purpose long in place which Congress believed the Supreme Court had misinterpreted," giving rise to an inference that Congress intended the amendments to be applied retroactively.

■ *Leake* and *Tirozzi* do not establish a new rule of construction that restorative legislation is presumed to apply retroactively, as some district courts in this circuit have held. *See, e.g., Kemp v. Flygt Corp.*, 791 F.Supp. 48, 51 (D.Conn.1992); *McLaughlin v. New York*, 784 F.Supp. 961, 972 (N.D.N.Y.1992). Rather, *Leake* and *Tirozzi* simply invite courts to use restorative language and intent as but one means of discerning congressional intent as to retroactivity. *See Smith v. Petra Cablevision Corp.*, 793 F.Supp. 417, 430 n. 13 (E.D.N.Y.1992) (conflicting legislative history of Civil Rights Act of 1991 precludes application of the *Leake* inference of retroactivity).

In the present case, Congress deliberately deleted all "restore" language in drafting the 1991 version. *Compare* Civil Rights Act of 1990, *printed in* 136 Cong. Rec. S9966, S9966 (daily ed. July 18, 1990) (stating that purpose is to "respond to the Supreme Court's recent decisions by restoring the civil rights protections that were dramatically limited by those decisions ..."), *with* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1071 (1991) (purpose is "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes ..."). If anything, this tips the scale in favor of non-retroactivity. In any event, restorative purpose is irrelevant here since, as discussed above, the legislative history makes clear that Congress deliberately expressed no view as to the retroactivity of the Act.

### B. *The Two Prospectivity Exceptions*

Plaintiff argues that two sections of the Act, which provide for prospective-only application to certain classes of defendants, require the inference that the rest of the Act was retroactive. The Ninth Circuit so held in *Reynolds v. Martin*, 985 F.2d 470 (9th Cir.1993), following the "cardinal principle of statutory construction ... to save and not to destroy[,] ... giv[ing] effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section...." *Id.* at 473 (quoting *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–520, 99 L.Ed. 615 (1955)). While we certainly would not assail this elementary canon of construction, we disagree with the Ninth Circuit's invocation of it here and question whether the court fully appreciated the particular context in which the two provisions were inserted into the 1991 Act.

Section 402(b) provides that the 1991 Act will apply prospectively only to "any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983." This narrowly-tailored provision was designed to benefit the defendant-petitioner in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (Title VII disparate impact case that provided part of the impetus for Congress's enactment of the 1991 Act), and was inserted at the last minute at the urging of the Senators from Alaska to protect a major employer in their state. *See* 137 Cong.Rec. S15469 (daily ed. Oct. 31, 1991) (statement of Sen. Adams); 137 Cong.Rec. S15478 (daily ed. Oct. 30, 1991) (statement of Sen. Dole); 137 Cong.Rec. S15953 (daily ed. Nov. 5, 1991) (statement of Sen. Dole); 137 Cong.Rec. H9555–56 (daily ed. Nov. 7, 1991) (statement of Del. Faleomavaega); *see also Gersman*, 975 F.2d at 889–90; *Johnson*, 965 F.2d at 1372 n. 4; *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 933 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992). When this provision was added to the bill, Senator Murkowski of Alaska and Senator Dole assured their colleagues that no inference as to the retroactivity of the entire bill should be drawn from it. 137 Cong.Rec. S15493 (daily ed. Oct. 30, 1991) (statement

of Sen. Murkowski); 137 Cong.Rec. S15953 (daily ed. Nov. 5, 1991) (statement of Sen. Dole).

The second of the two provisions, § 109, extends the protection of Title VII and the Americans with Disabilities Act to United States citizens working overseas for United States companies. Subsection (c) provides that § 109 applies only to future conduct. This explicit prospective-only provision is uninformed by any legislative history.

▆ In contrast to the Ninth Circuit in *Reynolds*, the Fifth, Seventh, and D.C. Circuits all have held that these two provisions are properly read as "insurance policies" against the possibility that a court would deem the entire Act to apply retroactively. *Gersman*, 975 F.2d at 890 (the two provisions are merely "insurance policies"); *Johnson*, 965 F.2d at 1372–73; *Mozee*, 963 F.2d at 933 (holding that § 402(b) is "nothing more than a clear assurance" that the Act would not apply retroactively to the *Wards Cove* case regardless of the retroactivity of Act generally, and that § 109(c) also appears to be an "extra assurance"). We agree. The two provisions deal with matters that are relatively insignificant to the 1991 Act as a whole. Moreover, there is no suggestion that either was added against a background assumption that Congress intended the entire Act to be retroactive. They seem to have been inserted by individual legislators to protect constituent interests against the possibility that the statute ultimately would be held retroactive in the full knowledge that the retroactivity question was an open one that could go either way in the courts. The floor statements of Senators Dole and Murkowski that no inference should be drawn from the addition of § 402(b) considerably bolster this conclusion.

The Ninth Circuit in *Reynolds* argued that § 402(b) and § 109(c) must be read in conjunction with § 402(a), which provides that "[e]xcept as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." The panel, reasoning that the phrase "as otherwise specifically provided" referred to sections 402(b) and 109(c), concluded that the plain meaning of "shall take effect upon enactment" must be that the rest of the Act applies retroactively. *Reynolds v. Martin*, 985 F.2d at 473–74. However, the history of the passage of the Act belies this reading. The 1990 Civil Rights Act contained six provisions which specified, for each section of the act, the extent to which such section would apply retroactively. *See, e.g.*, Civil Rights Act of 1990, Sec. 15(a)(6), *printed in* 136 Cong. Rec. S9966, S9968 (daily ed. July 18, 1990) ("[the § 1981 amendments] shall apply to all proceedings pending on or commenced after June 15, 1989"). In light of the deletion of these retroactivity provisions in the 1991 Act, and the legislative history indicating the failure of various factions to make the Act either expressly prospectiveonly or expressly retroactive, we fail to see how the inclusion in the 1991 Act of the phrase "shall take effect upon enactment" can be read to mean that the Act shall apply retroactively.

▆ We do agree with the *Reynolds* court, however, that it is the duty of reviewing courts to give effect to every clause and word of a statute where possible. We easily do so with respect to the phrase "[e]xcept as otherwise provided" since the Act, in various sections, requires certain things to take place in the future. Section 204(b), for example, states that the Glass Ceiling Commission established by § 203 shall present a report to the President and Congress "[n]ot later than 15 months after the date of the enactment of this Act." Section 303(b)(4) states that the first Director of the Office of Senate Fair Employment Practices "shall be appointed and begin service within 90 days after the date of enactment of this Act." Thus the better reading of § 402(a) is that the Act's provisions will become law and will begin to be in force as of the date of enactment, but certain mandates of the Act need not be implemented until some later date. Whether the Act's general provisions being in force means that they will be applied retroactively is a separate question that is left unresolved by the Act's language and its legislative history.

## C. Applicable Retroactivity Presumption Absent Congressional Intent

Since neither the 1991 Act's language nor its legislative history indicates whether it should be applied retroactively or prospectively only, we turn to certain presumptions the Supreme Court has established for courts to apply when a statute is silent as to retroactivity and Congress has failed otherwise to indicate its intention. In this endeavor we are, somewhat regrettably, faced with two lines of authority in apparent conflict. In *Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." In contrast to *Bradley*'s retroactivity presumption, in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Court held that "[r]etroactivity is not favored in the law. Thus, congressional enactments ... will not be construed to have retroactive effect unless their language clearly requires this result." *Bowen* did not overrule, or even refer to, *Bradley*. Likewise *Bradley* does not overrule the cases preceding it on which *Bowen* relied for authority. *E.g., Miller v. United States*, 294 U.S. 435, 439, 55 S.Ct. 440, 441, 79 L.Ed. 977 (1935) (cited in *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471). Justice Scalia noted in his concurrence in *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), that these two lines of cases are "in irreconcilable contradiction" and urged the Court to resolve the issue, *id.* at 841, 110 S.Ct. at 1578 (Scalia, J., concurring), but the Court did not reach the question since it found clear congressional intent to apply the statute at issue prospectively only. *Id.* at 837–38, 110 S.Ct. at 1577–78.

While we tend to agree with Justice Scalia that the lines of cases are "in irreconcilable contradiction," it is beyond our authority to choose one and disregard the other. *Cf. Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989) (Courts of Appeals must follow Supreme Court case that directly applies and may not depart from it because it conflicts with reasoning of another line of decisions).

The principle of *Bowen*, that absent an explicit directive or legislative history to the contrary, a statute should be applied only prospectively, is the more established doctrine in our jurisprudence. In *United States v. Security Industrial Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982), a post–*Bradley* case, the Supreme Court noted that "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." The Court in *Security Industrial Bank, id.* at 79–80, 103 S.Ct. at 413 also quoted the statement from *United States Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.*, 209 U.S. 306, 314, 28 S.Ct. 537, 539, 52 L.Ed. 804 (1908), that "[t]he presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other." See also cases collected in *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471. While the Ex Post Facto Clause of Article I, Section 9 of the United States Constitution applies only to criminal statutes, the fundamental principle animating that clause, that persons be given an opportunity to conform their conduct to the law before incurring its sanctions, is equally applicable to civil cases. *See Luddington*, 966 F.2d at 227–28; Lon Fuller, *The Morality of Law* 38–39, 51–63 (1969). Judge Posner has noted that while courts are not compelled to apply this principle to civil cases by the Constitution, "conformity to it is the right policy for courts to follow in default of other guidance." *Luddington*, 966 F.2d at 228.

Against this jurisprudential background, reflected in Supreme Court case law, the Court handed down *Bradley*. In *Bradley*, after the district court had entered judgment in favor of the plaintiffs in a school desegregation case and while the appeal

was pending, Congress enacted § 718 of the Educational Amendments of 1972, 20 U.S.C. § 1617, which provided for the recovery of attorneys' fees in school desegregation cases. The Bradley Court ruled that a new rule established in a statute should be applied to a case on appeal unless there is a statutory directive to the contrary, whether explicitly or in the legislative history, or if applying the statute retroactively would cause manifest injustice. 416 U.S. at 711–16, 94 S.Ct. at 2016–2019. The Court in Bradley relied on an earlier case, Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), which applied retroactively a Department of Housing and Urban Development regulation changing the procedures by which local housing authorities may evict tenants. The regulation in Thorpe, like the attorneys' fees statute in Bradley, was promulgated while the case was on appeal: it had been decided by the North Carolina Supreme Court but was pending before the United States Supreme Court. Id. at 271–72, 89 S.Ct. at 520–21.

Thorpe and Bradley cited prior Supreme Court cases in support, but every case cited either involved statutes in which the Court found clear retroactive language or intent, or dealt with changes in the law due to a judicial decision. See Kaiser, 494 U.S. at 846–48, 110 S.Ct. at 1581–1583 (Scalia, J., concurring). Contrary to the general presumption of non-retroactivity of statutes, new rules announced in judicial decisions generally are presumed to apply retroactively. See James B. Beam Distilling Co. v. Georgia, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

All of the circuits that have addressed the issue of which presumption ought to apply in the context of the 1991 Act have applied a presumption of prospectivity, and all have followed Bowen, except the Eleventh Circuit, which ruled that the Act should be applied prospectively only under either the Bradley or the Bowen test, since it found it would be "manifestly unjust" to the defendants to apply the Act retroactively. Baynes, 976 F.2d at 1373–75. Some of these circuits have relied on the Supreme Court's decision in Bennett v. New Jersey, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572

(1985), that Bradley does not apply to changes in substantive rights and therefore does not apply to the 1991 Act. See Gersman, 975 F.2d at 898–99 (D.C.Cir.); Johnson, 965 F.2d at 1374; Mozee, 963 F.2d at 936; see also Vogel, 959 F.2d at 598. Still other circuits have chosen the Bowen line over the Bradley line outright. Holt v. Michigan Dept. of Corrections, 974 F.2d 771, 773–74 (6th Cir.1992); Luddington, 966 F.2d at 227–29 (noting that Title VII changes were changes in procedure, remedies, and evidence, but noting nonetheless that these changes could impact reliance interests and should not be applied retroactively). The Eighth Circuit did not reach the Bradley/Bowen issue since it found a legislative intent to apply the Act prospectively only, but stated that Bowen was "the better rule." Fray, 960 F.2d at 1378.

In the Second Circuit we have sought to harmonize Bradley and Bowen along lines that Justice Scalia noted in his concurrence in Kaiser, Thorpe, Bradley, and the cases they cite, as well as Bennett, involved the specific situation where the legislative change occurred while the case was pending on appeal. Justice Scalia wrote: "It is doubtful ... whether the Thorpe–Bradley presumption of retroactivity survives at all. If it does, however, it only survives (as it was begotten) as a special rule applicable to changes in law after initial adjudication." Kaiser, 494 U.S. at 854, 110 S.Ct. at 1586 (Scalia, J., concurring). Justice Scalia's interpretation of Bradley and Thorpe is the law of this circuit. In Litton Systems, Inc. v. American Tel. & Tel. Co., 746 F.2d 168, 174 (2d Cir.1984), we held:

> We do not understand Bradley to mean ... that the only cognizable basis for a construction against retroactivity is either explicit statutory language or unequivocal congressional intent. Determination of retroactivity remains a matter of statutory construction, albeit with a presumption in favor of retroactivity as to judgments pending on direct review, contrary to the normal presumption against retroactivity in other circumstances.

See also United States v. Target Rock Corp., No. 90 Civ. 4414 at 20, 1992 WL

157677, 1992 U.S.Dist. LEXIS 9858 (E.D.N.Y. June 30, 1992).

While this court has cited *Bradley* since *Litton* was decided in cases that were not pending on appeal when the legislative change was enacted, in these cases we did not apply the *Bradley* presumption, but instead either found that congressional intent was unambiguous and only cited language from *Bradley* for the unremarkable proposition that congressional intent is dispositive, *e.g., Taub, Hummel & Schnall v. Atlantic Container Line, Ltd.*, 894 F.2d 526, 529 (2d Cir.1990) (statute expressly prospective-only); *Counsel v. Dow*, 849 F.2d 731, 736 n. 4 (2d Cir.) (congressional intent unambiguous), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988), or cited it for the similarly settled principle that new rules announced by court decisions are presumed to apply retroactively, *e.g., Gonzalez v. Home Ins. Co.*, 909 F.2d 716, 723 (2d Cir.1990) (*Patterson* decision applies retroactively).

▮ This distinction between cases pending on appeal and cases yet to be decided by the district court poses an obvious problem. Under our interpretation of *Bradley*, the litigant whose claim has already been heard before the district court under the old statute but is pending on appeal will have the new statute presumptively applied, but a litigant whose case is yet to be decided by the district court will have the old statute presumptively applied. While we believe, notwithstanding *Bradley*, that *Bowen* and the overwhelming weight of Supreme Court precedent support the proposition that there should never be a presumption of retroactivity where congressional intent is ambiguous, if a presumption of retroactivity were to apply to only one of the above situations, it would seem that it should be the reverse of our *Bradley/Bowen* distinction: where a district court has already rendered a decision under the former statute when the new statute is passed, there is a lesser, not greater, reason to presume retroactivity. The Seventh Circuit and Justice Scalia also have noted this anomaly. *See Kaiser*, 494 U.S. at 854–55, 110 S.Ct. at 1586 (Scalia, J., concurring); *Mozee*, 963 F.2d at 936 ("such

a distinction has no basis in policy"). However, given that we have concluded that *Bowen* sets forth the general rule and *Bradley* the exception, we are forced to distinguish *Bradley*, and, absent further guidance from the Supreme Court, we see no compelling reason not to follow *Litton*. We therefore follow *Bowen*'s presumption that the Act is to be applied prospectively only as to Plaintiff's § 1981 suit and decline to follow the *Bradley* retroactivity presumption, since her cause of action accrued prior to the Act's November 21, 1991 effective date and was not pending on appeal at that time.

III. Plaintiff's § 1981 claims under *Patterson v. McLean Credit Union*

Since the 1991 Act does not apply to Plaintiff's case, we must apply the law as it existed prior to the Act. Under *Patterson*, a claim of discrimination in promotions is actionable under § 1981 "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer...." *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. The *Patterson* Court did not elaborate on the meaning of "new and distinct" relation, except by citing *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), a Title VII case involving an associate in a law firm who had been denied partnership, presumably to indicate that elevation to partnership would create a "new and distinct" relation. 491 U.S. at 185–86, 109 S.Ct. at 2377. The elevation from associate to partner is perhaps the paradigm of a new and distinct relation. *Hishon* does not assist, however, in defining the border between actionable and nonactionable promotions under § 1981.

▮ *Patterson* held that § 1981 only provides a cause of action for discrimination in making and entering contracts, and not for discrimination in the performance of contracts. *Id.* at 176–178, 109 S.Ct. at 2372–73. With respect to promotions, the inquiry is whether a promotion effectively creates a new contract between employer and employee or is simply the fulfillment of a stated promise or an implicit expectation in the original contract. If the former, it is actionable under *Patterson;* if the latter it

is not, since it is a matter of contract performance and not formation. *See Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1371–72 (5th Cir.1992) (promotions that are no more than "a fulfillment of expectations implicit in the original employment contract" are not actionable under § 1981), *petition for cert. filed*, Sept. 29, 1992.

 Promotions understood by the parties to be given routinely upon satisfactory job performance do not give rise to a new employment contract. Similarly, moving an employee from one position to another as part of a reallocation of personnel resources, not involving a substantial increase in status or responsibility, is apt to be implicit in the original contract and thus would not give rise to § 1981 liability under *Patterson*, even though the move might entail a salary increase or somewhat more responsibility. However, any promotion that creates a qualitatively different relation between the employer and employee, for example, a move from factory worker to foreman, foreman to foreman supervisor, or manager to officer, likely would create a new and distinct relation giving rise to a § 1981 action under *Patterson*.

 The inquiry should not be confined to titles; it should examine actual changes in responsibility and status. It is also relevant to evaluate whether the promotion is the type of routine advancement for which only present employees typically qualify, or whether it is to a position that would be open to somebody outside the organization. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1311 (7th Cir.1989); *see also Johnson*, 965 F.2d at 1370–72. Because determining whether a promotion would create a new and distinct relation will require some factual inquiry into the changes in responsibility and status it will involve, it generally is inappropriate to dispose of a § 1981 promotion claim based on *Patterson* at the pleading stage. *See Aiken v. Bucks Ass'n for Retarded Citizens, Inc.*, Civ. No. 91–2672, 1991 WL 243537, 1991 U.S.Dist. LEXIS 16670 (E.D.Pa. Nov. 14, 1991); *Revis v. Slocomb Ind., Inc.*, 765 F.Supp. 1212, 1215 (D.Del.1991).

Plaintiff has three promotion claims under § 1981 that fall within the applicable three-year statute of limitations. In *Good-man v. Lukens Steel Co.*, 482 U.S. 656, 660–62, 107 S.Ct. 2617, 2620–22, 96 L.Ed.2d 572 (1987), the Supreme Court held that, in § 1981 actions, a court should look to the state statute of limitations for personal injury actions. The applicable New York statute is C.P.L.R. § 214(5). The district court mistakenly relied on *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), and held that C.P.L.R. § 214(2), which sets forth the limitations period for actions based upon a statute, was the proper limiting period. The outcome is the same, however, because both § 214(5) and § 214(2) set forth three-year limitations periods. Since Butts filed her complaint on August 5, 1991, her two 1987 promotion claims are time-barred, but the three claims based on denials of promotions in 1989 are not.

 Plaintiff's three timely promotion discrimination claims involve alleged denials of promotion from Computer System Manager on one occasion to Deputy Commissioner of the Office of Management and Administration and on two occasions to Director of Systems Architecture. The positions of Deputy Commissioner or Director of Systems Architecture could entail substantially different, and greater, supervisory and policy-making responsibilities and a corresponding change in status so as to amount to a new and distinct relation between Butts and the City. But this determination cannot be made simply by examining the complaint. We therefore find that the district court erred in dismissing under *Patterson* Plaintiff's three timely promotion claims and remand them for further consideration.

## CONCLUSION

For the reasons set forth above, we affirm the district court's dismissal of Plaintiff's Title VII claims, except for the two claims relating to her exclusion from reorganization meetings, as to which we reverse. We affirm the district court's finding that the § 1981 amendments of the Civil Rights Act of 1991 do not apply retroactively, and affirm its dismissal of Plaintiff's § 1981 claims for discrimination in the terms and conditions of her employment. We also affirm the district court's

dismissal of Plaintiff's untimely promotion discrimination claims under § 1981. However, we reverse the district court's dismissal of Plaintiff's timely § 1981 promotion claims alleging the City's failure to promote her to Deputy Commissioner of the Office of Management and Administration and Director of Systems Architecture. We remand the case to the district court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded. The parties shall bear their own costs.