**Jamshid R. MODY, as Administrator ad Prosequedum for the Heirs-at-Law of Navroze Mody, Deceased and as Administrator of the Estate of Navroze Mody, Deceased**

v.

**The CITY OF HOBOKEN, Lieutenant Kiley, Thomas Cahill, George Crimmins, Miriam Acevedo, as parent and natural guardian of defendants, Luis Acevedo and William Acevedo, Luis Acevedo, William Acevedo, "John" Gonzalez, fictitious first name representing the parent and natural guardian of defendant, Ralph Gonzalez, Ralph Gonzalez, John Padilla, first name fictitious intended to representing the name of the parent and natural guardian of defendant, Luis Padilla, Luis Padilla.**

and

**George CRIMMINS, Third Party Plaintiff,**

v.

**IMPERIAL CASUALTY AND INDEMNITY CO., a Corporation doing business in New Jersey,**

**Jamshid R. Mody, Appellant.**

No. 91–5407.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Jan. 28, 1992.

Decided March 23, 1992.

Amy R. Winsten, Robert E. Margulies, Margulies, Wind, Herrington & Katz, Jersey City, N.J., for appellant.

Matthew Kiffen, Joseph K. Cooney, Widman & Cooney, Ocean Township, N.J., for appellee City of Hoboken.

Michael L. Dermody, DeLeonardis, McGovern & Dermody, Jersey City, N.J., for appellees Lieutenant Martin Kiely and Thomas Cahill.

Richard C. Heubel, Harold J. Ruvoldt, Jr., Ruvoldt & Ruvoldt, P.A., Jersey City, N.J., for appellee George Crimmins.

Before MANSMANN, HUTCHINSON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Jamshid Mody (Mody), an Asian Indian, appeals a ruling of the United States District Court for the District of New Jersey directing a verdict against Mody on his civil rights claims against the City of Hoboken, New Jersey (Hoboken) and three of its police officers. Mody is suing in his capacity as the administrator of the estate of his late son, Navroze Mody. Navroze was beaten to death in Hoboken by a gang of young thugs. Navroze's father claims the Hoboken police's indifference to acts of violence perpetrated against Asian Indians violated Navroze Mody's equal protection rights under the Fourteenth Amendment to the United States Constitution and proximately caused his son's death. The district court directed a verdict against Mody because it believed he had not shown that the Hoboken Police Department's alleged indifference was the product of racial discrimination against Asian Indians or that its indifference had caused the beating that killed Navroze Mody. We will affirm.

### I.

Mody filed a complaint against Hoboken and Hoboken police officers Lieutenant Martin Kiely (Lieutenant Kiely), Detective Thomas Cahill (Detective Cahill), Police Chief George Crimmins (Chief Crimmins) (collectively "the defendants") and others [1]

---

1. The other defendants were the four men who beat and killed Navroze Mody along with their parents or guardians. They do not appear to have actively participated at trial, and Mody did not pursue his claims against them. They are not involved in this appeal though the district court did issue, post-trial, a final order dismissing Mody's claims against them.

in the United States District Court for the District of New Jersey on April 19, 1989. Mody brought claims under 42 U.S.C.A. § 1983 (West 1981) and § 1985(3) (West 1981).[2] In his section 1983[3] claim, Mody stated the defendants violated the equal protection rights of his son when they did not file criminal complaints against persons who had committed earlier acts of violence against Asian Indians in Hoboken. He also alleged that criminal complaints were not filed because Hoboken and its police discriminated against Asian Indians on the basis of race and that their discriminatory behavior led to Navroze Mody's beating and death. Mody's section 1985(3)[4] claim stated that the defendants conspired to engage in the racially discriminatory conduct that the section 1983 claim was based on.

After discovery, the defendants filed motions for summary judgment. The district court denied these motions and the case went to trial. 758 F.Supp. 1027. At the close of Mody's case, the district court heard motions for directed verdicts by the defendants. Initially, it reserved decision on the motions and the defense began its case on April 24, the fifth day of trial; but, later that day, it decided to grant the defendants' motions for directed verdicts.

The district court held evidence was lacking in crucial areas. First, it decided:

> [T]here has been no evidence submitted that the original attack on the two Indian victims was motivated by the fact that the victims were Indian.
>
> Further, the Court concludes that there was no evidence submitted that the failure to prosecute the assailants was motivated by the fact that the victims were Indians.

Appellant's Appendix (App.) at 362–63. The court then reached the question of proximate cause:

> Here again as to causation, there is no competent evidence that had the assailants been prosecuted, that the tragic death of Mr. Mody would not have occurred.

*Id.* at 364. The court did rule that Mody brought this action in good faith and it was not frivolous, so precluding the defendants from securing counsel fees or costs. Mody then filed this timely appeal.

## II.

As in all appeals from a directed verdict for a defendant, we state the facts by viewing the evidence "in [the] light most favorable to the plaintiff." *Walmsley v. City of Phila.*, 872 F.2d 546, 547 & n. 1 (3d Cir.), *cert. denied*, 493 U.S. 955, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989); *see Bielevicz v. Dubinon*, 915 F.2d 845, 849 (3d Cir. 1990). So viewed, we summarize them as follows.

During August and September of 1987, newspaper reports and testimony indicated

---

**2.** Mody's complaint asserted other claims. All of them were decided adversely to Mody, but no arguments concerning them are raised in this appeal. Therefore, we cannot consider them.

**3.** Section 1983 states in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983.

**4.** Section 1985(3) states in part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3).

that an air of hostility against Asian Indians hung over Hoboken and bordering Jersey City. Asian Indians had been attacked in Jersey City by a group known as "Dot Busters." App. at 344–45. Though a minority, Asian Indians are present in those cities in substantial numbers. Articles concerning the "Dot Busters" appeared in local newspapers and the Hoboken police force was generally aware of the problem.

On September 12, 1987, two Asian Indian students from Stevens Institute of Technology (Stevens) in Hoboken, Syed Hasan (Hasan) and Vikas Aggarwal (Aggarwal), were walking to a restaurant named East L.A., two blocks from Stevens, for dinner. At 9:00 p.m., as they were about to enter the restaurant, someone stepped in front of them and stole Hasan's umbrella. Hasan turned and saw a man holding a baseball bat and another running away with the umbrella. When Aggarwal stepped forward and asked for the umbrella back, he was punched in the face by one of the men. About this time, an unknown person hit Hasan on his left side with a metal bar.

Hasan and Aggarwal entered the restaurant to escape their assailants. Aggarwal was bleeding profusely from his mouth. From inside the restaurant, he and Hasan could not see whether their assailants had left the area. They decided to walk back to Stevens and call security. Hasan only got as far as the curb when he was hit from behind with a baseball bat and fell into the road. Two men then picked Hasan up bodily, slammed him against the door of an adjoining store and punched and kicked him for about five minutes. Hasan ran back to Stevens alone. None of the men tried to rob Hasan. In the meantime, Aggarwal had also been attacked and struck senseless. He too was not robbed during the attack and, after the Hoboken police found him, he was taken to St. Mary's Hospital.

Mr. Ivan Sales (Sales), a man of Hispanic origin employed at a nearby restaurant called "Chicken Galore," saw the attack and called to the men beating Hasan and Aggarwal to stop. In response, three of the attackers ran over to Sales and assault-ed and robbed him. The attackers fled as police responded to the scene.

After receiving medical treatment for their injuries, Hasan and Aggarwal gave signed statements to the Hoboken police about the attacks. While Hasan said he would recognize "the tall chap" if Hasan saw him again, neither Hasan nor Aggarwal could identify the attackers. Sales was able to identify two of them as "Chinito" and "Chinito's" brother. App. at 372–73. Hasan and Aggarwal were not asked whether they wanted to file complaints against their attackers. After they gave the police their respective dorm hall phone numbers and addresses so the police could reach them if needed, they left thinking that there was nothing further for them to do in order to press charges. Later Hasan did contact the Hoboken police to give them the phone number of his uncle's house in Queens, New York where he was staying while he recuperated from the attack.

Three days after the assaults, Detective Cahill learned that William Acevedo, also known as "Chinito," "was telling his friends in Hoboken High School how he had beat up two Indians and the Chicken man." Id. at 371. On September 17, 1987, William and Luis Acevedo went to the Hoboken police station. Detective Cahill reported that he then called Hasan and his roommate, Aggarwal, but Hasan said he did not want to file a complaint. The phone number Detective Cahill said he called was not the phone number of either Hasan or Aggarwal, and Hasan and Aggarwal were not roommates. Hasan and Aggarwal said they never told the Hoboken police that they did not want to press charges. Indeed, Aggarwal said he was never contacted by the police after he reported the incident. Hasan testified that he once received a message at his dormitory that the police had called and would call back, but they never did. Detective Cahill did contact Sales. Contrary to earlier statements, Sales now said that he did not want to file a complaint.

About a week after the attack, Peter Van Schaick (Van Schaick), a friend of Hasan's family and an attorney practicing in Hobo-

ken, went to the Hoboken Police Department to talk with Lieutenant Kiely upon learning from Hasan that the police had taken no action in the matter. Lieutenant Kiely explained that no action had been taken because none of the victims had filed a complaint, but he admitted that he could legally pick up the attackers without awaiting a filed complaint from the victims. This explanation surprised Van Schaick since Hasan and Aggarwal had told him they did want the police to press charges. Van Schaick also told Lieutenant Kiely that he suspected the Hoboken police were not pressing the matter because the victims were Asian Indians. Later, another member of the Hoboken police force told Van Schaick that gangs and the "dot busting" problem were not high on the police department's priority list.

On September 27, 1987, just a little more than two weeks after the Acevedo brothers' brutal assault on Hasan and Aggarwal, Navroze Mody was severely beaten in Hoboken. He died on October 1, 1987. After Navroze died, the Hoboken police did ask Hasan and Aggarwal if they wanted to file complaints against the Acevedo brothers in connection with the earlier assaults.

The record does not show what happened as a result of this request, but the Acevedo brothers, along with Ralph Gonzalez (Gonzalez) and Luis Padilla (Padilla), were charged in connection with the fatal attack on Navroze Mody. All four went to trial. Gonzalez, Padilla and Luis Acevedo were convicted of aggravated assault and William Acevedo was convicted of simple assault. The record before us also does not show whether Gonzalez, Padilla and the Acevedo brothers were found guilty after a bench or jury trial or what sentences they received.

Professor Matthew Neary (Neary), an Associate Professor of Police Science at John Jay College of Criminal Justice and a former New York City police officer, gave expert testimony for Mody. He said that the efforts the Hoboken police made to contact Hasan and Aggarwal after the Acevedo brothers had talked to the police were inadequate, that the police should have told Hasan and Aggarwal that they would have to file formal complaints if they wanted to bring criminal charges against the Acevedo brothers, and that, in any event, the police should have apprehended the Acevedo brothers in connection with the Hasan and Aggarwal assaults.

### III.

We have appellate jurisdiction over the district court's directed verdict in favor of the defendants pursuant to 28 U.S.C.A. § 1291 (West Supp.1991). The district court had subject matter jurisdiction in this case by virtue of 28 U.S.C.A. § 1331 (West Supp.1991) (federal question) and 28 U.S.C.A. § 1343(a)(1)–(3) (West Supp.1991) (civil rights actions).

When a district court directs a verdict in favor of one party, we perform the same analysis that the district court did. *Walmsley*, 872 F.2d at 551. Therefore, our review is plenary. A directed verdict can only be granted when all the evidence, viewed as favorably as possible for Mody, cannot support a verdict for Mody on his sections 1983 and 1985 claims. *Id.* In deciding whether there is any reasonable basis on which Mody could win, the district court does not weigh the credibility of witnesses but assumes their testimony is credible and looks at it in the way that best supports Mody, the party opposing the directed verdict. *Id.*

### IV.

Mody raises three arguments on appeal. First, he contends that the defendants are liable because their failure to provide adequate police protection was substantially motivated by a racially discriminatory mind set against Asian Indians. Under 42 U.S.C.A. § 1983, Mody contends, racially motivated inadequate police performance that results in harm to Asian Indians violates the equal protection clause of the Fourteenth Amendment. He goes on to argue that he adduced proof at trial that would allow a reasonable jury to find that a discriminatory denial of adequate police protection to Asian Indians was the proxi-

mate cause of Navroze Mody's death. Finally, Mody says that he also produced sufficient evidence for a jury to find that the actions of Lieutenant Kiely and Detective Cahill constituted a conspiracy to deprive Navroze Mody of equal protection of the law under 42 U.S.C.A. § 1985(3).

We assume that discriminatory denial of police protection on the basis of race constitutes a violation of section 1983. *Cf. Hynson v. City of Chester, Legal Dep't,* 864 F.2d 1026, 1031 (3d Cir.1988) (section 1983 claim could be established where domestic violence victims were afforded less police protection due, at least in part, to discrimination against women and discriminatory policy caused plaintiff's injury). If, however, the district court was correct in ruling there was not enough evidence to show that racial bias lay behind the police's failure to respond adequately to the first attack, there will be no need for us to address Mody's section 1985(3) claim. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971) (section 1985(3) requires proof that conspirators sought to deprive a person of equal protection of the laws). Thus, we go on at once to examine the issues that troubled the district court: whether the evidence produced would allow a jury to infer that the police's inaction after the attack on Hasan and Aggarwal was substantially motivated by the police's racial animus toward Asian Indians.

Mody's basic theory is that the defendants' failure to take action after Hasan and Aggarwal were assaulted was but one aspect of defendants' discriminatory policy, usage or custom of not prosecuting diligently those who commit crimes against Asian Indians, that this policy encouraged more and more violent crimes against Asian Indians and this unchecked escalating violence resulted in Navroze Mody's death. Of course, success on that theory, whether advanced under section 1983 or section 1985(3), also depends on Mody's ability to establish a causal relationship between the discriminatory policy and the

injury to the plaintiff. *See City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989) (municipality only liable under section 1983 when its discriminatory policy or custom results in injury); *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (government official only liable under section 1983 when he or she causes deprivation of federal right); *Griffin,* 403 U.S. at 103, 91 S.Ct. at 1798 (section 1985(3) requires that conspiracy result in injury or loss of federal right).

The record lacks direct evidence that Gonzalez, Padilla and the Acevedo brothers attacked Navroze Mody because he was Asian Indian. Mody argues this can be inferred, even though the assaults upon Hasan and Aggarwal took place without any remarks about their Asian Indian origins, because no reason but racial or ethnic hate toward Asian Indians can explain the attack. He also says the attackers' hatred of Asian Indians can be inferred from the fact that Sales, the only one of the four assault victims Mody refers to who was not Asian Indian, was the lone robbery victim. Sales, the chicken man, was known to have a pocketful of cash from his chicken deliveries when the assault occurred. Despite some reservations about the logic of Mody's inference, it is understandable, considering the circumstances, on the basis of induction. We will therefore simply assume, without deciding, that Mody's inference of racial motivation is circumstantially possible under the standard that governs rulings on defense motions for a directed verdict.

█ Mody has, however, failed to produce evidence on other essential elements of his case. There is no proof that the Acevedo brothers' arrest for beating Hasan and Aggarwal would have deterred Gonzalez and Padilla from beating Navroze Mody. Mody did not produce evidence showing that either Gonzalez or Padilla were implicated in the Hasan and Aggarwal beatings.[5] There is likewise no evi-

---

5. To the extent that Mody appeals the district court's ruling preventing his expert, Neary, from

testifying about the probability that apprehending the Acevedos after the Hasan and Aggarwal

dence that the police had any other reason to apprehend Gonzalez, Padilla or anyone else besides the Acevedos before the attack on Navroze Mody.

■ Proof is similarly missing in another critical respect. Again viewing the evidence in the light most favorable to Mody, the record does not disclose any basis on which a reasonable jury could find either that the police's failure to ask Hasan and Aggarwal if they would like to file criminal complaints or their failure to apprehend the Acevedos without a formal complaint from these victims was racially motivated.[6] Sales was not Asian Indian. Still, the police also told him he would have to file a complaint before they would arrest the Acevedos. This requirement may have been bad police practice, as Mody's expert opined, but absent evidence the practice was racially motivated, there can be no recovery under 42 U.S.C.A. § 1983. The fact that Sales was told of this requirement and Hasan and Aggarwal were not is also not the basis for a finding of racially disparate police protection. Mody's only right to recover damages for failure to protect Navroze Mody adequately, like that of any citizen, resident or sojourner in New Jersey depends on whether New Jersey law allows recovery for injury from criminal attacks that better police practice could have prevented.

We cannot simply assume the police share a racial hatred of Asian Indians with those persons or groups in the community that were perpetrating the vicious assaults reported in local news stories to the extent that they would deliberately turn their backs on crimes committed against members of that minority. It would be different if Mody had shown the police uttered racial slurs against Asian Indians or produced other evidence of an atmosphere of disparagement towards Asian Indians among the police that was knowingly toler-

ated by the Hoboken officials responsible for police conduct, or presented evidence of a consistent police pattern of conduct that required Asian Indian assault victims, but not victims from other discrete minorities, to file criminal complaints before suspects would be apprehended.

Here, the evidence necessary to show constitutionally discriminatory police action in failing to provide cognizable minorities with protection from crime is absent. Evidence regarding a custom or policy by Hoboken to this end is also absent. In this connection, the district court's conclusion is apt:

> If assaults are being made upon Indians or any minorities in Hoboken or anywhere else and there is a failure to apprehend and prosecute their assailants because of the race or nationality or national origin of the victims, then such acts and policy are to be condemned and must be terminated in order to afford the equal protection which the Constitution guarantees and requires.
>
> In this case, however, the proofs are insufficient to support such a claim or permit its submission to a jury even after giving all reasonable inferences to the plaintiff.
>
> The circumstances are tragic and the loss to the Modys is beyond redemption, but absent competent evidence, the Court cannot permit liability to be imposed on the City or any of its individual officers.

App. at 366.

Proof that Asian Indians were being assaulted and beaten in Hoboken and Jersey City, without more, does not prove that the beatings of Hasan, Aggarwal and Navroze Mody were the result of racial hatred. These beatings and the awful death of Navroze.Mody are, of course, signs that a disturbing problem exists in Hoboken, a problem that can only be solved by combining firm action on the part of a police force sensitive to racial problems with the collec-

---

assaults would have deterred them from committing future assaults, Brief of Appellant at 28 n. 1, we review the district court's decision for an abuse of discretion. *See United States v. Theodoropoulos*, 866 F.2d 587, 590 (3d Cir.1989). In this respect, we hold that the district court did not abuse its discretion because, among

other reasons, the Acevedos were not the only ones who attacked Navroze Mody.

**6.** The reader will note the distinction between racial motivation for the attacks on Asian Indians and racial motivation for any faulty police practice in responding to them.

tive efforts of all segments of the community to ensure that the basic constitutional rights of Asian Indians and all other ethnic groups are respected. While the police cannot be expected to wholly prevent violence, they are, after all, our first line of defense against it. When they fail, all suffer, not just the members of the group immediately victimized. The beatings of Hasan, Aggarwal, Sales and Navroze Mody are indeed visible signs of an inward sickness in Hoboken and Jersey City. They are a chilling reminder of the senseless violence that afflicts ordinary people in cities whose residents have lost their general sense of community. Violence that feeds on random victims is particularly terrifying when it is visited by one ethnic or racial group against another. The fact that Navroze Mody was an Asian Indian does not preclude the possibility that future victims will be Anglo, Hispanic, Italian, Japanese, black or white, yellow or brown.

## V.

We will affirm the district court's judgment in favor of the defendants. Each party to bear its own costs.

