Donald WILDS, Plaintiff,

v.

UNITED STATES POSTMASTER GENERAL, Defendant.

Civ.No. 3:95cv206(JBA).

United States District Court, D. Connecticut.

Sept. 30, 1997.

John T. Bochanis, Thomas J. Weihing, Daly, Weihing & Bodell, Bridgeport, CT, for Plaintiff.

Donald Wilds, Bridgeport, CT, pro se.

David X. Sullivan, U.S. Atty.'s Office, New Haven, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT [DOC.25]

ARTERTON, District Judge.

This is an action for employment discrimination based on race and disability, and retaliation, pursuant to 42 U.S.C. §§ 1981, 1981a, 2000e–5(f) (Title VII of the Civil Rights Act of 1964, as amended); and 29

U.S.C. §§ 701–794 (Rehabilitation Act of 1973). Plaintiff Donald Wilds additionally alleges negligence by the defendant in testing the plaintiff for drug use. Plaintiff demands back pay and costs associated with the expenses of his job search incurred since his dismissal, compensatory damages and punitive damages to the maximum allowable by Title VII, compensatory and punitive damages to the maximum allowable by the Rehabilitation Act, an order declaring that defendant engaged in unlawful employment practices, an order reinstating plaintiff at his appropriate rank and seniority, or in the alternative, front pay, and reasonable attorney's fees and costs.

The action is presently before the court on defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.

## Background

Plaintiff was employed by the Postal Service from October 1988 through September 1992, and from June 1993 through October 1993. During that time, defendant issued plaintiff a notice of removal on March 1992 on the grounds of repeated absenteeism. Plaintiff denied the allegations of absenteeism, and in lieu of termination, the parties entered into a "Last Chance Agreement" on April 8, 1992. This agreement required that the plaintiff be in regular attendance within specific parameters, or risk removal. In September 1992, the plaintiff was terminated for excessive absenteeism. At this time, plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC). This complaint was settled when the parties entered into an agreement titled "Settlement of EEO Discrimination Complaint" in November 1992. This agreement stipulated that plaintiff was to be re-employed by the defendant, but plaintiff was required to participate in a drug rehabilitation program, to be drug free at the time of his request for re-employment, to have a valid Connecticut state driver's license, and to participate in an Employee Assistance Program (EAP) and random drug testing. Under the terms of this agreement, the parties were supposed to enter into another Last Chance Agreement with specifications for performance, but plaintiff alleges he was never presented with an agreement to sign.

After plaintiff's successful completion of the EAP, defendant reinstated him in June 1993. The plaintiff then underwent periodic random drug testing during the course of his employment. In September 1993, the plaintiff underwent a drug test that he contends was performed in a negligent manner. In October of 1993, plaintiff received notice from the Postal Service that he was terminated based on the positive drug testing done in September. Plaintiff alleges that the test was faulty, and contrary to defendant's regular practice, he was not allowed to take a second test. In addition to his allegations that the drug test was performed in a negligent manner, plaintiff alleges that the termination was based on race discrimination, retaliation for his first claim filed with the EEOC, and disability discrimination based on his status as a recovering substance abuser. In October of 1993, plaintiff again sought help from the EEOC in opposing his termination.

## Legal Standard

Both parties having submitted extensive exhibits and statements of material fact, and the court having relied upon that material outside the pleadings in reaching the following conclusions, this motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(c). In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute, and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, "the non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir. 1995); *Celotex Corp. v. Catrett,* 477 U.S. 317, 332, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986). If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing

party, summary judgment is improper. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996). However, "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In deciding a motion for summary judgment, all reasonable inferences and any ambiguities must be drawn in favor of the non-moving party. *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

### Failure to Exhaust Administrative Remedies for Rehabilitation Act Claim

 Defendant contends that plaintiff's claims under the Rehabilitation Act must be dismissed for failure to exhaust administrative remedies. Exhaustion of administrative remedies is an essential element for both Title VII and the Rehabilitation Act.[1] *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198 (2d Cir.1985). The exhaustion requirement "is an essential element of Title VII's statutory scheme." *Butts v. City of New York Dept. of Housing*, 990 F.2d 1397, 1401 (2d Cir.1993). Accordingly, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts*, 990 F.2d at 1401. "The Second Circuit has set forth 'three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action.'" *Ausfeldt v. Runyon*, 950 F.Supp. 478, 485 (N.D.N.Y.1997) (citation omitted). The first exception is based on the fact that the "Second Circuit recognizes that employees often fill out EEOC charges without the benefit of counsel. As a result, [there is]

essentially an allowance of 'loose pleading'." *Id.* This exception gives the benefit of the doubt to non-legally trained litigants, and recognizes the fact that the primary purpose of the EEOC charges "is to alert the EEOC to the discrimination that a plaintiff claims she is suffering." *Butts*, 990 F.2d at 1402. The second type of "reasonably related" claim is one alleging retaliation for filing an EEOC charge. *Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d Cir.1993). The third type of reasonably related claim is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge. *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, (2d Cir.1984).

Although plaintiff filed an EEOC claim in compliance with the exhaustion requirement, he failed to allege specifically that he was pursuing a disability discrimination claim in addition to his race discrimination claim. Plaintiff now argues that his Rehabilitation Act claim should be construed to have been "reasonably related" to his EEOC pleadings. In the Information for Precomplaint Counseling form that plaintiff filed with the EEOC, he states that the following occurred:

> On 9–30–93, I reported for work at Noble station (USPS) at 7:00 a.m. and I was told by Queenie Young, acting supervisor, that I was not scheduled to work that day and rest of the week. Teresa Robinson, supervisor, notified me of same of following week. On 10–6–93 I received a letter from Mark Gillis I was terminated due to the fact I had allegedly failed drug test at Dr. Miller office on Noble Ave.... [illegible].

Ex. C, Plaintiff's Mem. in Opp. On plaintiff's EEO Complaint of Discrimination in the Postal Service form, plaintiff checked off the boxes marked "race," "color" and "retaliation" for the types of discrimination alleged. The "EEO Complaint of Discrimination in the Postal Service" clearly includes a box for "disability," which plaintiff did not check. When asked to explain the specific nature of the discrimination, plaintiff wrote:

> Based upon items checked off in item eleven above, I know I am being discriminated

---

1. The Rehabilitation Act incorporates the remedies and procedures of Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. 29 U.S.C. § 794a.

against by the U.S. Postal Service when they terminated me due to alleged failure of drug test (urine sample). The U.S. Postal Service breached the EEO settlement agreement when they failed to establish a nexus between urine sample and myself. White employee who took drug test were given two tests the same day to confirm positive or negative specimen. Specifically [this white employee was] George Demsick.

Ex. C, Plaintiff's Mem. in Opp. In his EEO Investigative Affidavit, plaintiff wrote, "I, Donald Wilds, know that I am being discriminated against due to my race (Black) and prior EEO activities." *Id.* He goes on to describe in detail the administration of the disputed drug test, then states that "I deny I had any kind of drugs in my system. It should be noted that I took three drug tests prior to Sept. 8, 1993 and passed them.... White-male carrier George Demsick was given several last chance agreements reinstated due to postal official's flaws." *Id.* Nowhere in the EEOC documents submitted to the court does Mr. Wilds expressly claim protected status as a recovering drug user, although the documents reference his participation in a drug rehabilitation program. *See* Ex. D, Plaintiff's Mem. in Opp. Rather, he argues in his memorandum in opposition that his Rehabilitation Act claim:

could have reasonably arose [sic] from the EEOC investigation. Mr. Wild's [sic] complaint identified his status as recently released from a rehabilitation center. Mr. Wilds told the EEOC he was dismissed under the guise of a failed drug test (Exhibit C). Mr. Wilds [sic] complaint also claimed he was improperly denied access to a second drug test (Exhibit C). Clearly, the same issues that would arise in a rehabilitation claim were raised here.

Plaintiff's Mem. in Opp. at 6. While the court is attentive to the difficulties that unrepresented litigants may face in filling out government forms, the court must disagree with plaintiff's analysis of this issue. Recalling the purposes of the exhaustion requirement and the goals of the exceptions to the exhaustion requirement, the exhaustion requirement exists "to give the administrative agen-cy the opportunity to investigate, mediate, and take remedial action..." *Stewart v. United States Immigration and Naturalization Service,* 762 F.2d 193, 198 (2d Cir.1985). The exceptions to this rule are "animated by the common notion of fairness to civil litigants." *Butts,* 990 F.2d at 1402. The Second Circuit has applied these exceptions in cases where investigation of a new claim "would have reasonably flowed" from investigation of the first claim. *Gomes v. Avco Corp.,* 964 F.2d 1330, 1335 (2d. Cir.1992) (finding that investigation of a disparate impact claim would have reasonably flowed from investigation of a disparate treatment claim); *but see Butts,* 990 F.2d at 1403 ("Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation ... such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated.").

In the case at hand, however, it cannot be said that plaintiff's Rehabilitation Act claim would have reasonably flowed from his race discrimination claim. Although the circumstances underpinning the race claim relate to the disputed drug test, it is a large leap of logic to expect that the EEOC investigators should intuit that plaintiff may also have a Rehabilitation Act claim. The allegations in the EEOC papers contain no hint that Mr. Wilds believes that it was his status as a recovering drug user that led to the allegedly discriminatory termination, only that he was disparately treated compared to white employees. There is no mention that others who were not recovering drug users were treated any differently than Mr. Wilds. This is not a case in which the plaintiff is now pointing to different, new acts of the same kind of discrimination. Nor is it a case in which any factual allegations in the EEOC charge point strongly toward a claim of discrimination based on Mr. Wilds' status as a recovering drug user. This is not a case in which the plaintiff articulated a set of facts, but simply did not know the legal language for expressing what kind of discrimination he was experiencing, such as allegations that a superior questioned his ability to perform his job based on his past drug use. Although

the complaint is vague as to how Mr. Wilds believes that he was discriminated against based on his disability, the Court does not read the complaint as alleging that it was the fact that Mr. Wilds was required to undergo the drug test that was the discriminatory act. Rather, the court understands the complaint to allege that the discrimination occurred when Mr. Wilds was terminated without being given the opportunity for a second drug test. Thus, without some kind of allegation in the EEOC complaint that his termination related to his *status* as a recovering drug user, other than the mere fact that he was given drug tests, the court concludes that his current charge of discrimination based on his status as a recovering drug user is insufficiently related to be considered subsumed in his EEOC charge.

This is not a circumstance in which an employee knew the nature of his mistreatment, but lacked knowledge of the proper legal label to use. Mr. Wilds' administrative complaint gives no indication that he even contemplated that his status as a recovering drug user was at issue, other than to require him to undergo drug testing, which in and of itself cannot be claimed to be discriminatory. There is no requirement or expectation that EEOC investigators should go beyond their duties to investigate the claimed discrimination and factual underpinnings to divine other potential claims.

Here, construing plaintiff's rehabilitation claim to be reasonably related to his EEOC charge would neither advance the purposes of the exhaustion requirement, nor its exceptions. Therefore, Mr. Wilds' Rehabilitation Act claim must be dismissed for failure to exhaust administrative remedies.

### Race Discrimination and Retaliatory Discharge Claims

Title VII of the Civil Rights Act of 1964 makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... or national origin." 42 U.S.C. § 2000–e2(a)(1). The court considers plaintiff's race discrimination allegations under the familiar three-step burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the standards set forth in *McDonnell Douglas,* plaintiff must first prove by a preponderance of the evidence a "prima facie" case of race discrimination. 411 U.S. at 802, 93 S.Ct. at 1824. The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978).

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. At this stage, defendant " 'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

If defendant carries this burden of production, plaintiff must show that the reasons articulated for the adverse decision were pretextual and that plaintiff was the victim of discrimination. *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citation omitted). Plaintiff's burden at this stage can be met by presenting "additional evidence showing that 'the employer's proffered explanation is unworthy of credence.' " *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir.1995) (citation omitted). Disbelief of defendant's articulated reason for the adverse employment action is sufficient to support, although it does not necessarily compel, a finding for plaintiff. *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749. *See also Binder v. Long Island Lighting Co.,* 57 F.3d 193, 200 (2d Cir.1995) (holding trier of fact may "generally infer discrimination when it

finds that the employer's explanation is unworthy of credence.").

"To make out a prima facie case of retaliation under Title VII, appellant must show: protected participation or opposition under Title VII known by the alleged retaliator; an employment action disadvantaging the person engaged in the protected activity; and a causal connection between the protected activity and the disadvantageous employment action." *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir. 1987) (citation omitted). Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant. *Id.*

Once a plaintiff has established a prima facie case, the employer must demonstrate a legitimate, non-discriminatory reason for the alleged mistreatment. *Id.* The burden then shifts back to the employee to prove that the employer's proffered reason for its conduct is pretextual. *Id.*

■ Defendant assumes, for the sake of argument, that Mr. Wilds can establish a prima facie case of discrimination and retaliation. Rather, defendant contends that he has presented a sufficient non-discriminatory reason for Plaintiff's discharge. "In this case, the Postal Service discharged Plaintiff because he failed to live up to the terms of an EEO settlement that he had entered into on a last chance basis. He knew that, under the agreement, a positive drug test would be grounds for termination." Defendant's Mem., at 9. In support of this contention, defendant presents the lab report from CompuChem Laboratories, Inc., showing a positive result for cannabinoids. Attachment 7, Defendant's Statement of Material Facts. Defendant also presents the Postal Service Chain of Custody form for the urine specimen as signed by Mr. Wilds. Attachment 8, Defendant's Statement of Material Facts. The Chain of Custody form shows Mr. Wilds' signature indicating that Mr. Wilds provided the specimen, and Mary Gibson's signature

acknowledging that she received it. Attachment 8, Defendant's Statement of Material Facts. Defendant also submits a copy of the removal letter sent to Mr. Wilds. It states,

> On September 8, 1993, you underwent a Postal Service initiated drug screen. The results received by the Bridgeport Post Office on September 28, 1993 showed a positive test for cannabinoids, an illegal substance. Accordingly, you have violated the provisions of EEO/Last Chance Settlement and are removed from the Post Office.

Attachment 10, Defendant's Statement of Material Facts. The foregoing satisfies defendant's burden under *McDonnell–Douglas* of "set[ting] forth, through the introduction of admissible evidence reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747 Defendant's evidence, if believed, shows that Mr. Wilds tested positive for an illegal substance, and that this was the stated reason for the termination.

■ In response to defendant's assertion that plaintiff was fired for failing a drug test, plaintiff argues that this was merely a pretext. *See Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747. In support of this proposition, Mr. Wilds claims in his affidavit that the terms of the EEOC settlement never specified that a positive drug test would be grounds for immediate termination, that the settlement does not require him to remain drug free, and that he never knew that failure of a drug test would constitute grounds for termination. Exhibit A, ¶ 14, Plaintiff's Mem. in Opp. In fact, the EEOC settlement did not expressly provide that failure of a drug test would constitute grounds for dismissal, or that Mr. Wilds was required to remain drug free, merely that Mr. Wilds would undergo random drug testing. Exhibit D, Plaintiff's Mem. in Opp.

However, plaintiff's critique of the inadequacy of defendant's drafting does not rebut defendant's position that the failed drug test reason was the reason that defendant terminated Mr. Wilds. In other words, while

plaintiff may dispute whether the drug test was a sufficient reason to fire him, standing alone it does not demonstrate the existence of fact on which a jury could reasonable conclude the real reason was discrimination or retaliation. As civil rights litigants have found to their dismay, courts have not required that the proffered reason be a good or rational reason, merely a non-discriminatory one. *Graefenhain v. Pabst Brewing*, 827 F.2d 13, 20 (7th Cir.1987) ("A business decision need not be good or even wise. It simply has to be nondiscriminatory..."); *but see, Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir.1988) ("A court's perception that an employer misjudged an employee's qualifications might be probative in some cases on the issue of pretext. The distinction lies between a poor business decision and a reason manufactured to avoid liability.").

Mr. Wilds also asserts that the drug test was actually faulty, and thus the underlying reason for his dismissal was false. To bolster this allegation, Mr. Wilds states in his affidavit that

> The drug test given on September 8, 1993 was not done in a trustworthy and reliable manner. The test cup of my urine sample was not properly identified as belonging to me by the testing facility. My test cup was not automatically marked as belonging to me by the nurse as was the normal custom during prior procedures. Prior to leaving the drug test facility my test cup was never marked and identified as mine.

Exhibit A, ¶¶ 26–28, Plaintiff's Mem. in Opp. Plaintiff cites the case of *Henry v. Daytop Village, Inc.*, 42 F.3d 89 (2d Cir.1994), to stand for the proposition that "evidence that the reason for the dismissal is false, is central to establishing pretext under the third prong of the *McDonnell Douglas—Burdine* test." *Id.* at 95 n. 1. The real issue in that case was whether the defendant "trumped up" charges it *knew* to be false. In this case, Mr. Wilds does not make this claim; rather, his claim is that defendant relied on an incorrect test result that the drug facility reported as positive. Attachment 7, Defendant's Statement of Material Facts. Plaintiff makes no claim that defendant had knowl-

edge of test inaccuracy, only that defendant did not corroborate the result with a second test, presumably used to reduce the likelihood of false positives. Construing the facts in the light most favorable to the non-moving party, however, the court will take plaintiff's allegation to be that defendant was unreasonably willing to accept an uncorroborated positive test result. However, defendant's reduced testing standards applied to plaintiff must have some context to see if inferences point toward proof of discriminatory conduct.

In this regard, Mr. Wilds' reasons that the delay of one month between the drug test and notification of his termination raises suspicion that the drug test was not the real reason for his termination, but was resurrected as the excuse to fire him. The test was taken on September 8, 1993, the results are dated September 12, 1993, and the termination letter is dated October 5, 1993. Even accepting that version of facts as true, however, Mr. Wilds still carries the ultimate burden of proving that "the defendant intentionally discriminated against the plaintiff." *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747. Unless the nature of the showing of pretext itself contains the inference of discriminatory intent, the plaintiff cannot merely rest on a showing of pretext, but must come forward with evidence that the real reason was more likely than not illegal discrimination.

To meet this standard, Mr. Wilds presents the deposition testimony of plaintiff's former supervisor, Mark Gillis, who acknowledged in his deposition, Exhibit E at 24, Plaintiff's Mem. in Opp., that the only other employee to have ever been immediately discharged without progressive discipline during the last fifteen years was an individual whose unoccupied postal vehicle was left running and rolled into and killed a pedestrian. Mr. Wilds, however, was the first employee working for Mr. Gillis to have ever failed a drug test. Affidavit of Gillis, Exhibit A, ¶ 16, Defendant's Statement of Material Facts. The weight and significance of these two statements as showing a pretext for discrimination should be left for credibility determinations at trial.

Importantly, at this summary judgment stage, Mr. Wilds claims that white employees

who failed drug tests were given a second test to confirm the results. However he does not come forward with any evidence of other employees who were given opportunities for subsequent tests,[2] nor does he present any Postal Service documents setting out guidelines that prescribe giving follow up tests. His only evidence for this proposition is that he asserted it in his EEOC complaint. Exhibit C, Plaintiff's Mem. in Opp. A "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510. Thus, plaintiff has failed to show that he has any specific facts of racially disparate treatment in drug testing for use at trial.

As additional evidence of discriminatory intent, Mr. Wilds points to lesser discipline of a white employee, George Demsick, who violated a second Last Chance Agreement, was terminated but was subsequently reinstated[3] by Mr. Gillis' superior, the local Postmaster. Exhibit D, at 40–42, Plaintiff's Mem. in Opp. Mr. Wilds' case may be undermined by the fact that Mr. Demsick may have "engaged in conduct different in kind to that attributed to" plaintiff *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 97 (2d Cir.1994). For "evidence relating to other employees to be relevant, those employees must be situated similarly to plaintiff." *Lieberman v. Gant*, 630 F.2d 60, 68 (2d Cir.1980). Even so, plaintiff argues that if looked at from a higher level of generality, Mr. Demsick did engage in substantially the same conduct as Mr. Wilds: they were both disciplined for violating a Last Chance Agreement.

Presumably, the Last Chance Agreement is only used in cases serious enough to warrant termination upon violation of the agreement, hence the name. Mr. Demsick's underlying infraction was of a different nature than Mr. Wilds', but both infractions must have been serious enough to expose them to discharge. Mr. Demsick's disciplinary history includes absenteeism, but it is unclear what the dimensions of his problem were, or if it was comparable to Mr. Wilds' disciplinary history.[4] Exhibit E, Plaintiff's Mem in Opp. Without a fuller factual record regarding the nature of Mr. Demsick's wrongdoing, the court cannot determine whether or not the Last Chance Agreements were administered and implemented uniformly, or if the comparative, differential treatment of Mr. Wilds and Mr. Demsick fairly infers discriminatory intent.

Thus, whether or not Mr. Demsick was sufficiently similarly situated to Mr. Wilds, and whether or not their treatment at the hands of the defendant was uniform, is relevant to the question of whether Mr. Wilds' treatment was motivated by racial discrimination. As there is a question of fact as to whether the different disciplinary treatment was due to the seriousness of the infraction or the person being disciplined, Mr. Wilds should have the opportunity to present these issues to a fact-finder.

The court will reserve decision on the issue of punitive damages against the Postal Service until such a time as it is clear that damages are warranted in this case.

### Jurisdiction Over Negligence Claim Under the FTCA

 Plaintiff faces yet another exhaustion hurdle in regard to his negligence claim. Defendant contends that this claim is also barred for failure to exhaust administrative

---

2. In Mr. Wilds' EEOC complaint, he alleges that, "White employee who took drug test were given two tests the same day to confirm positive or negative specimen. Specifically [this white employee was] George Demsick." Exhibit C, Plaintiff's Mem. in Opp. However, in the text of both defendant's memorandum and plaintiff's memorandum in opposition, Mr. Demsick is referred to as having violated a Last Chance Agreement based on attendance problems, not drug tests. Defendant's Mem at 12, Plaintiff's Mem. in Opp. at 19. The second scenario is also supported by Mr. Gillis' deposition, in which he catalogues Mr.

Demsick's disciplinary history. Exhibit E, at 40–42, Plaintiff's Mem. in Opp.

3. Apparently, "*last* chance agreement" is not an entirely accurate name for these statements of understanding since multiple last chance agreements are used.

4. For example, the record before the court does not unequivocally exclude the possibility that Mr. Demsick's absenteeism was related to drug use or other similarity to plaintiff.

remedies. Under § 409(c) of Title 39, any tort claim arising out of the conduct of postal operations is cognizable only under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2671 *et seq.* "Under 28 U.S.C. § 2675(a), a plaintiff may not bring a FTCA claim in district court until plaintiff has exhausted his administrative remedies." *Bumpus v. Runyon,* No. 94 Civ. 2570, 1997 WL 154053, *6 (S.D.N.Y.1997). Plaintiff responds by arguing that his original EEOC claim should be sufficient exhaustion of the negligence claim because the Postal Service should have been on notice that he considered the performance of the test to be negligent.

Section 2675(a) states:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). The enabling regulations of this section of the FTCA state that:

(a) ... [a] claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury...

(b)(1) A claim shall be presented to the Federal agency whose activities gave rise to the claim. When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer.

28 C.F.R. § 14.2. "Section 2675 is designed ... to provide a procedure under which the government may investigate, evaluate and consider settlement of a claim. This purpose requires that the Notice of Claim provide sufficient information both to permit an investigation and to estimate the claim's worth." *Keene Corp. v. United States,* 700 F.2d 836, 842 (2d Cir.1983). Preferably, plaintiff should have filed a Standard Form 95 with the Postal Service. However,

an administrative claim need not meet formal pleading requirements. All that is necessary is that a claim be specific enough to serve the purposes intended by Congress in enacting § 2675(a)—"to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States."

*Johnson by Johnson v. United States,* 788 F.2d 845, 848–49 (2d Cir.1986). Even with this relaxed pleading requirement, "lack of a sum certain and the generality of the information provided" will be fatal to a claim. *Richland–Lexington Airport District v. Atlas Properties, Inc.,* 854 F.Supp. 400, 412 (D.S.C.1994). "The requirement that the claim state a specific dollar sum, like other requirements imposed in § 2675, is jurisdictional and cannot be waived." *Adams by Adams v. United States Dep't of Housing & Urban Dev.,* 807 F.2d 318, 321 (2d Cir.1986). Mr. Wilds indicates in his EEOC complaint that the corrective action sought is:

Return to active duty. Made whole for lost wages, due time, etc., prior EEO settlement still into effect, *damages of 300,-000.00,* cease, desist discriminatory factors. Postmaster Boccio, supervisor Teresa Robinson given remedial training on EEO and sociology. Reimbursement for travel, postage, xerox expenses.

Ex. C, Pl.'s Mem. in Opp. (emphasis added). The court construes this monetary demand to be a maximum amount claimed, under either Title VII, the FTCA, or both. This interpretation fulfills the purpose of the "sum certain" requirement in that the Postal Service has notice of the maximum to which it will be exposed, and can pursue settlement on the claims if it so wishes. Consequently, Mr. Wilds has adequately exhausted his administrative remedies through his EEOC

**188**

Complaint, and may proceed with his Federal Tort Claims Act cause of action.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [DOC. 25] is GRANTED in part and DENIED in part. Specifically, the plaintiff may proceed on his Title VII claim insofar as he has alleged that a white employee was treated more favorably, and his Federal Tort Claims Act claim. Defendant's motion for summary judgment is granted as to plaintiff's Rehabilitation Act claim.

IT IS SO ORDERED.